STATE OF MAINE  SUPERIOR COURT
CUMBERLAND, ss. CIVIL ACTION
DOCKET NO. CV-08-219

HENRY R. NORING,

    Plaintiff

                           ORDER
v.

SIDNEY P. KILMARTIN,

    Defendant

## BEFORE THE COURT

Before the court is the defendant Sidney P. Kilmartin's (Defendant Kilmartin) motion to disqualify plaintiff's counsel, Daniel Lilley (Lilley) and all other partners and associates of Daniel G. Lilley Law Offices, P.A. (Lilley Law Offices) from further representation in this matter.

## BACKGROUND AND PROCEDURAL HISTORY

This case arises from an incident on October 16, 2007 in which Defendant Kilmartin allegedly entered the apartment of Plaintiff Henry R. Noring (Noring) without his permission and attacked Noring in his bed. On January 10, 2008, Defendant Kilmartin's wife, Deborah Kilmartin (Ms. Kilmartin), contacted Lilley Law Offices via email seeking legal representation for her husband. The email described the events leading up to and concerning the event subject to this action and requested the legal assistance of Lilley. Later that day Lilley responded to Ms. Kilmartin via email indicating that in order to obtain Lilley's services Ms. Kilmartin would need to pay at least $15,000.00 as a retention fee. Ms. Kilmartin did not supply a retainer fee. On February 14, 2008, Ms. Kilmartin claims she sent a letter totaling ten pages in length to Lilley Law Offices, which gave the

history of Defendant Kilmartin's struggles during the years leading up to the events subject to this action.[1] The letter included statements damaging to Defendant Kilmartin's defense in the case. According to Ms. Kilmartin, the information in both emails to Lilley Law Offices was intended to be confidential and not to be used against Defendant Kilmartin. At no time did Defendant Kilmartin discuss the potential case with an attorney at Lilley Law Offices, other than through her e-mail correspondence described above.

On March 6, 2008, Ms. Kilmartin was notified that Lilley Law Offices was going to represent Noring instead of Defendant Kilmartin. After Noring hired Lilley, on April 14, 2008, he filed a complaint against Defendant Kilmartin alleging counts of assault, battery, and intentional infliction of emotional distress. In the instant motion to disqualify Lilley, Defendant Kilmartin argues that Lilley and his partners and associates should be disqualified from the representation of Noring because the firm's receipt of the correspondences from Ms. Kilmartin is in contravention to the Maine Bar Rules, specifically Rules 3.4(b)1 and 3.6(h)(1)(iv). Defendant Kilmartin contends the decision to represent Noring, after having received consultation from his wife concerning the case, presents a conflict of interest.

---

[1] Defendant Kilmartin submitted *ex parte* Exhibits A and B to the court for in camera inspection only to determine the instant motion. Exhibit A includes email correspondences between Ms. Kilmartin and Lilley Law Offices, including the first email Ms. Kilmartin sent to Lilley Law Offices on January 10, 2008. Exhibit B is the 10-page letter Ms. Kilmartin purportedly sent on February 14, 2008. Although Lilley now denies receiving the February 14 letter, Exhibit A includes an email correspondence, dated March 10, 2008, in which a staff member at Lilley Law Offices acknowledges that Ms. Kilmartin did send a letter to the firm's webmaster dated February 14, 2008.

# DISCUSSION

## 1. Standard of Review

Attorney conduct is governed by the Maine Bar Rules. The Bar Rules are enforced by the Maine Supreme Judicial Court, which has supervisory power over attorneys. *Casco Northern Bank v. JBI Assocs.*, 667 A.2d 856, 859 (Me. 1995) (citing *Koch v. Koch Indus.*, 798 F.Supp. 1525, 1530 (D. Kan. 1992)). A party moving to disqualify an attorney has the burden to demonstrate more than mere speculation that an ethics violation has occurred, but doubts should be resolved in favor of disqualification. *Id.* at 859. The court, however, must ensure that motions to compel disqualification are not used to gain a merely tactical advantage. *Id.*

## 2. Conflicts of Interest: Prospective Clients

A conflict of interest occurs where "there is a substantial risk that the lawyer's representation of one client would be materially and adversely affected by the lawyer's duties to another current client, to a former client, or to a third person, or by the lawyer's own interests." M. Bar R. 3.4(b)(1). Pursuant to M. Bar R. 3.6(h), an attorney may not knowingly disclose or use information that is not generally known without informed consent, and:

> (iv) Is information received from a prospective client, the disclosure of which would be detrimental to a material interest of that prospective client, when the information is provided under circumstances in which the prospective client has a reasonable expectation that the information will not be disclosed.

M. Bar R. 3.6(h)(1)(iv). Rule 3.4 also provides that when an attorney has been disqualified under one of the rules, "no lawyer affiliated with the lawyer or the lawyer's firm, may commence or continue such representation." M. Bar R. 3.4(b)(3)(i).

3

The Board of Overseers of the Bar (the Board) has provided guidance on potential conflicts of interest with respect to prospective clients. The Board issued an opinion finding "[a] prospective client who consults with a lawyer, seeking advice and/or representation by that lawyer is . . . a 'client' of that lawyer" and thus, the confidences of the prospective client must be preserved and the lawyer may not represent the adverse party. Me. Grievance Comm'n, Op. No. 8 (Apr. 2, 1980). Another opinion set forth by the Board concludes that "if a lawyer or her staff has obtained secrets or confidential information through . . . telephone conversations, [from a prospective client], she cannot represent either party. This conclusion was not altered by the fact the lawyer's staff did not solicit the information." Me. Grievance Comm'n, Op. No. 156 (Feb. 5, 1997).

The Restatement of the Law Governing Lawyers draws a distinction between the protections afforded to a past client and that provided to a potential client. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 15 cmt. c (2000). The rules are more relaxed with respect to prospective clients, as "personal disqualification of a lawyer who deals with a prospective client occurs only when the subsequent matter presents the opportunity to use information obtained from the former prospective client that would be 'significantly harmful.'" Id. In such an instance and absent the prospective client's consent, the lawyer must withdraw from representation of an adverse party. Id.

3. **Representatives of Clients**

Plaintiff Noring argues that Defendant Kilmartin's motion to disqualify Lilley Law Offices from representation should fail because Ms. Kilmartin was not the potential client and could not speak for Defendant Kilmartin. In response, Defendant Kilmartin counters that Ms. Kilmartin was acting as Defendant

4

Kilmartin's representative when she sent the January 10 and February 14, 2008 correspondences to Lilley Law Offices seeking representation for her husband. Because she was acting as his representative, the communication deserves the same protection under Maine Bar Rules 3.4(b)1 and 3.6(h)(1)(iv).

By way of analogy, the rules pertaining to the lawyer-client privilege provide guidance regarding third parties acting as representatives for clients within legal representation. Rule 502 of the Maine Rules of Evidence defines a "representative of the client" as "one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client." M.R. Evid. 502(a)(1). The Restatement provides that in order for communication to be privileged "a client need not personally seek legal assistance, but may appoint a third person to do so as the client's agent." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 70 cmt. e. A person is a confidential agent for communication if "the person's participation is reasonably necessary to facilitate the client's communication with a lawyer or another privileged person and if the client reasonably believes that the person will hold the communication in confidence." *Id.* Factors that may be relevant in determining whether a third person is an agent for communication include (1) the relationship between the client and the asserted agent; (2) the nature of the communication; and (3) the client's need for the third person's presence to communicate effectively with the lawyer. *Id.*

Ms. Kilmartin was acting on Defendant Kilmartin's behalf when she contacted Lilley Law Offices. In her emails to Lilley Law Offices she discusses the case and the surrounding circumstances at length and requests representation for her husband. It is unlikely that Ms. Kilmartin would have

5

shared potentially damaging information if she did not have the expectation the information would be kept confidential. Acting as a representative of a potential client, Ms. Kilmartin reasonably believed Lilley Law Offices would hold the communication in confidence.

The alleged communications create the appearance of a conflict, which may materially and adversely affect Defendant Kilmartin's case. Such doubts shall be resolved in favor of Lilley Law Offices' disqualification. *See Casco Northern Bank*, 667 A.2d at 859. The continued involvement by Lilley Law Offices risks an appearance of impropriety too substantial to allow the firm to continue to represent Noring.

## CONCLUSION

The court hereby grants Defendant Kilmartin's motion to disqualify and Plaintiff Noring must retain alternate counsel or advise the clerk he will represent himself within 30 days. Exhibits A and B submitted by the defendant for in camera review shall remain sealed to protect Defendant Kilmartin's confidentiality.

DATE: May 14, 2009

Joyce A. Wheeler, Justice

6

)F COURTS
and County
Box 287
ine 04112-0287

JOHN FLYNN ESQ
DANIEL LILLEY ESQ
DANIEL G LILLEY LAW OFFICE
PO BOX 4803
PORTLAND ME 04112

F COURTS
and County
3ox 287
ine 04112-0287

THOMAS MARJERISON ESQ
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME 04112-4600